Case number 20-7105, J.T. Ethelant v. District of Columbia. Mr. Tirica, Mr. Ethelant, Ms. Ladstad, ready at work. Good morning and may it please the Court. I'm Douglas Tirica. I represent J.T., the mother of a minor student, V.T. As the parties greet the Court today, it is undisputed that V.T. cannot tolerate a long commute to and from school. If he is subjected to one, he will be unable to participate in his education. Where is J.T. now? A lot of time has elapsed. J.T., as the District Court's opinion makes clear, DCPS offered him no school whatsoever for the 2019-2020 school year, and compensatory education for that deficit is pending. The 2020-2021 school year, he did a portion of it at home. Of course, this is when the lockdown began. He is currently still being educated to some degree at home by DCPS because he cannot tolerate the face mask restrictions. Is he in a school or is he only at home? He just said to some extent. He is officially enrolled in a school. What school is that? Deal Middle School. How far is that from his house? Well, he's not attending in person. Were he to go by car, I think it would be less than 15 minutes, I believe. Okay, thank you. Just as there is no dispute regarding the limitations on V.T.'s tolerance for road transportation, there is no supported dispute that DCPS placed V.T. at each of the schools in question without ever consulting his parents in the least. I'm still trying to understand now what exactly is before us. So you're not here contesting placement at Deal. That's not before us. And how they're doing whatever balance of home and person they're doing, you're not contesting that. You can't be contesting the IEP because you didn't contest that and you've got a new IEP anyhow. No one's appealed the district court's decision on reimbursement for home education 2019-2020. So what question is before us? This regards the 2018-2019 school year. So the district court awarded compensatory education for the 2019-2020 school year. This is the preceding year. This is the year in which... Did the district court here address compensation for 2018-2019? I'm sorry. Was it was 2018-2019 before the district court in this case? Yes. Compensation for that? Compensatory education for that, yes. That is the belief requested. What your complaint says is you wanted an assessment for a future administrative complaint. Didn't actually ask for compensatory education. Assessment for a future claim for compensatory education. That's correct. The system that we worked out, which works out much more amicably for all the parties, is if we can get a compensatory education evaluation awarded, then once that is complete, the parties can negotiate compensatory education. Well, that may be how you work it out logistically, but you haven't asked the court for compensatory education for any year in your complaint. Have you? Yes, for compensatory education relief. In this case, relief in the form... The relief that you asked for in your complaint, unless I'm... If there's something else you want to point me to, again, is for a compensatory education evaluation, which, quoting your complaint, may serve as the basis for a future administrative complaint for compensatory education. You haven't asked, actually, for compensatory education. Yes, Your Honor. I'm afraid I'm talking past Your Honor. I'm saying the nature of the belief requested was the evaluation plus the right to bring a case later, if necessary. So, it's an order of an evaluation and essentially a dismissal of the remainder of the claim without prejudice. So, the only relief you're asking for at this point is for an assessment? For an assessment. The only thing you're asking... Sorry, all these masks and everything. I'm doing my best. I appreciate that. The only thing you're asking for from this court is an assessment and explicit permission to bring a case later, if necessary, based on that assessment. Wait. Explicit permission? First of all, you're... Have courts ordered this, an assessment and permission to bring a claim that you may or may not bring? Yes, and in fact, right now, we actually have an active administrative case for exactly that reason. Is there a court decision from this court or one of our district courts that says we can order an assessment without an actual live claim yet for compensatory education? Well, actually, in this case, regarding the 19-20 school year, that's exactly what the court ordered and we got that assessment. Regarding the 2019-2020 school year, the combination of the hearing officer and then the district court, in this case, found that DCPS had entirely failed to provide education and each of them ordered a compensatory education evaluation. We got those two evaluations done. DCPS, in fact, did not disagree with the substance of those findings, and unfortunately, we had some disagreement about the details, so we're hashing that out now. I've interrupted the merits of your argument. I'm sorry. Go ahead. Not at all, Your Honor. I prefer the questions, as most of us do. As there is no dispute regarding VT's inability to tolerate a long commute, there is no dispute that... A supported dispute that DCPS made each of these placement decisions without consulting the parents for their opinion, even in the most general matter, never mind complying with the strict procedural requirements within the IDEA. Nevertheless, despite these facts... On the procedural claim, how do you get around the Lunsford opinion, which seems pretty clearly to say that the selection of a school site is not itself a placement? Well, so the participation argument is not only based on the question of the change in placement, but on some other issues I'll address in a moment. But regarding Lunsford as was discussed in the briefs that this court did hold that way 35 years ago, that was before the Supreme Court had ever made any placement decision, any decision on a placement case. The Supreme Court did so shortly there afterwards in Burlington, and then this court decided McKenzie in which, as we say in our brief, the court repeatedly identifies the particular school as a child's placement. In every decision since then, this court has identified a particular school as the child's placement, not just a type of program, as the district argues today. And this court also in Knight, which follows shortly after McKenzie, noted the conflict between Lunsford and McKenzie and said that that could be put off for another day. This may be that day. I think that would serve a good purpose in this jurisdiction to have that clarified. And as we review in our brief, I think Lunsford, to the degree that it I think was wrongly decided, it was based on nothing other than one line of commentary from the department. Which line contradicts the statute? No, it was also relied on a decision from the Second Circuit, the leading decision in the case in the area. Well, the Second Circuit and this circuit went back and forth trading that same reasoning in a few decisions. I'm just telling you as a matter of fact that Lunsford relied on more than just Department of Education. I stand corrected, Your Honor, but any decision holding that placement does not refer to a school traces back to this one line of commentary, not to the statute, not to the regulations. And that commentary is not any kind of authority unless there's some ambiguity in the word placement, which there is not. If we go out and ask 100 people, we tell them we're going to write up a document describing a child's education and then we're going to base the child's placement on that document. Every one of those hundred people will understand you to be talking about school. Well, Congress doesn't always write like plain folks. I'm sorry, Your Honor? Congress doesn't always write like plain folks when it writes statutes. Understood. The question is whether it is a term with a specialized meaning within the IDEA and at least my read has some contradictory indications. Sometimes it seems to lean toward specific school and sometimes it seems to lean toward the type of education that this child is going to be entitled to. And so if we have precedent on point, you may disagree with it, but a panel of this court can't depart from that. I think this court has questioned that precedent. As I said, we've listed, I think, 10 different cases or certainly more than five in which this court has consistently identified a particular school as a child's placement. Regarding Congress's choice of definition for this term. So we start as always with the common usage of that term. I was hoping to save two minutes and I have much more to say. What was the prejudice? You talk about JT not being involved in placement decision and even assuming that's a school specific decision as you advocate. Given all the back and forth that she had with DCPS, all the input that she had, what prejudice was there from her not being involved? Did she have a school she never just mentioned to them? Did she have a school in mind that she wanted to use? No, Your Honor. And what was the prejudice of her not having, I guess, is your prejudice that she didn't get to veto these schools? Is that your view that they have, parents have a unilateral identifies as a denial of fate, the denial of or a substantial interference with participation in the process? What is the prejudice to her in this case? What more would she have done? She had all the input that anyone could ask for on these school decisions. And if she didn't have another school to propose to them, what would have been done? What would have changed? I fully disagree that she had input in the school decision. She had absolutely no input regarding CSM. She'd never even heard the name until she was informed of the decision. First, she went there and visited before it was chosen. She went with her son. She interacted with the school and had communications with them and visited. That's not true, Your Honor. The sequence of events regarding CSM, which was the school placement for the majority of the year, is DCPS having never mentioned the school before, sent her a letter saying he's going to CSM. After that, and it said, if you want to visit, this is how you arrange for a visit. After that, she went to visit. That placement decision was completely made. Frost was slightly more complicated, but Ms. Varlow herself was very clear that she alone made the placement decision, then informed JT of that decision. We review the timelines on pages two and three of the reply brief with citations to the record. It's perfectly clear that the placement was made without any consultation whatsoever with the school. As far as the prejudice, as I said, Rowley, supporting the IDA, said that the protections, that the guarantees of participation are every bit as important as the substance of the program. In this particular case... What would she have said? What didn't she get to say that she wanted to say? What piece of input was she not able to provide that she wanted to provide? The DCPS held a meeting with the mother to discuss, with JT, to discuss CSM, for example, and preferably a representative of CSM. She would have explained that it was too far away, that he could not tolerate that commute to make it there. She would have talked about the noise, his noise intolerance, and that he's extremely sensitive to noise. And the CSM witness at the hearing said he had no idea what VT's tolerance for noise in the classroom was. And they would have talked about the class size. So we can speculate as to what impact this might have had on DCPS's decision or on the school's decision. But in fact, when asked, the CSM representative said that he had been in meetings, in meetings like this, where the school was discussed as a possible placement. He has changed his mind based on what he had heard. Okay. My colleagues have any further questions? No. All right. Thank you. We'll give you a couple minutes on rebuttal. Council for the district now. Ms. Levesack, am I saying that right? Yes, you're correct. Good morning. May it please the court. Sonia Levesack for the District of Columbia. There are two main issues in this case. One is the parental participation claim, which is what we've been talking about. The other one is material implementation. Let me start with the issue of parental participation. There are two independently sufficient bases on which this court could affirm. First, educational placement issue is actually clear-cut as a matter of law. The statute, the regulations, the Department of Education's position, and Court of Appeals precedent all move in the same direction here. Educational placement is not school assignment. It's also consistent with this court's decisions in Lunsford and other cases where this court, in speaking about what educational placement is, has made clear that what it's talking about is a general type of educational program, or what the Department of Education has also referred to as a point along the continuum of placements. So, for example, moving from general education to a separate school, to a hospital or facility. This has been stable law in the courts, and as a matter of national regulatory practice, for decades. Any position to the contrary by this court would create a deep circuit split for essentially no reason. Second, the court could affirm without resolving the educational placement issue, simply because even if the IDEA's procedural protections apply, they were certainly satisfied here. There is no substantive denial of a fate in this case, and the record is replete with parents' participation in the school selection process. And let me start by saying that the on September 6, on August 1, the IEP was finalized. DCPS solicited parents' input into schools. They said, let us know if you're interested in a school. Council responded. We will respond quickly to any schools that contact us. September 6, CSM reaches out for an intake interview with the parent. On September 18, parent arranges to visit CSM with the child. September 24, that visit takes place. At this visit, she confers with the director of education. She observes her child in a classroom. The school also observes the child that is part of this process. Admissions decisions can only be made by the private schools themselves. They only admit students which are good fits for the school. And then on October 18, there's an admissions letter to JT. So the notion that somehow... What interaction did DCPS have with her about the CSM visit? What interaction did DCPS have with her about the CSM visit? Prior to advising them that CSM... So the contact was primarily, I mean, almost exclusively between the school and the parent. That's actually pretty typical of admissions processes. Here in the record, we don't see direct communication between CSM and JT. I will say at that point, though, she already declined FROST. So we do see some, like, for example, after the FROST visit, which parent attended with her child, she actually sort of sui sponte, sent an email to DCPS. She said, thanks for the referral. The visit went, you know, we had the visit. Right. That's why I'm asking. There was much more interaction with DCPS. I'm not talking about between the school and the parent. DCPS is the one that's supposed to involve the parent in this type of decision making, debating to what level. But even assuming it's a school specific one, I didn't see much from DCPS. I didn't see anything from DCPS. Honestly, they didn't mention CSM at the meeting. So it seems all between CSM and them. And then October 18th, boom, you're going to CSM without eliciting. I get that she didn't volunteer feedback, but DCPS didn't elicit any feedback either. The course reading of the record is accurate in this respect. The one thing that I would add is that, for example, we do know from the record that when parent mentioned to the director of education at CSM that there was a concern about the diploma track, the record reflects that concern immediately made its way back to DCPS. There is a loop. The record is not in this respect with respect to CSM, but when parents are talking, DCPS is listening. It's listening to the parents. It's trying to understand the concerns. So the record does have that aspect to it. And certainly there was more DCPS back and forth with respect to FROST. And at the time, there was zero back and forth with respect to FROST. I think that's fair. Based on this record, that would be fair. We do know that some things that were said in the record, for example, the concern about the diploma track, we heard about that at the hearing. So we know that there was contemporaneous collaboration between DCPS and the school regarding the placement. So that's essentially the size of the CSM record. But the hearing officer here, I think, made very astute findings and credibility determinations that at the point that CSM was a school, FROST had been rejected. It had been declined by the parent. And so there was already sort of this notion that, look, from DCPS, we provided a FAPE. We found a school. And, you know, the offer for CSM is actually a second. Did FROST, what evidence on the record shows that FROST had a quiet place? I'm not talking about noise generally in the background, but the IEP required that there be a distinct quiet place that he could retreat, that the child could retreat to at times when needed. And I didn't see any evidence on the record, but you can tell me if I missed it, that there was such a quiet place at FROST. I know there was one at CSM, but not at FROST from the record, unless you can tell me otherwise. I didn't see it in the record either. I'll also say it's never been an issue in the case. Well, noise was very much an issue. There very well could be such a room. It doesn't appear in the record. Wait, wait, wait. That's a specific part of the IEP that there be a quiet room. And so going, well, maybe there was one. We don't know. Seems to me that BCPS didn't do its job of making sure that FROST could implement the IEP. Let me back up. I don't know. However, what we have is... But the record doesn't show it. What we have are test statements in the record that the hearing officer found credible, that FROST stood ready to implement every aspect of the child's IEP. And so there was testimony on that score. Is a generalized statement like that sufficient when there were all these noise concerns and there was no evidence, affirmative evidence, that there was a quiet room, that there would be a place of quiet for this child when there's very much a dispute about sound levels? Is it sufficient to go, well, they said they could do it, and not to be more particularized? The testimony that I'm referring to was in the hearing where essentially the school district was responding to the concerns raised by the parent. So if there had been a quick Q&A, like, well, is there a quiet room? There would be a yes or no. I do think, given that the IEP is about 26 pages. To have the person testifying at the hearing go through and say, you know, as to page 17, paragraph 1, we can implement this in paragraph 2, your honor is right. The hearing does not reflect that kind of meticulous sort of implementation, but what we do have. Well, the hearing officer found that she made out a prima facie case as to FROST as not being sufficient. And then there was nothing to rebut that evidence, at least as to the quiet area. DCPS certainly carried its, I mean, as the hearing found, carried its burden to show that FROST could implement, and this is, you know, materially implement the IEP. Well, is having a quiet area something that a school could avoid doing? I had thought it was a very important part of the IEP. That wouldn't be something that would be an immaterial failure to implement, to not have a quiet area. I think, I guess I have two points on that. One, the issue is not whether the issue of noise is material, but whether the failure is material. And here, I guess I have sort of, I have two points. One is that the school could not, was not capable of implementing the IEP is speculation. And the Second Circuit precedent on this point, I think is very persistent. If it did not have a quiet room, let's say it was, we credit what was found that it could manage the noise level, something was going on that day, they can manage the noise. So they can do that. They can do everything in the IEP, but they lacked the quiet room. Would that be, that would not be an immaterial deviation from the IEP as I read it. I think that would, that would, at first, that is an issue that would have been raised at the place. It was very noisy and there was no quiet place. I don't think the parent, I'm not aware where that is in the record. Parent did say that she was unaware, that she was concerned about the fact that there were noisy children in the classroom. So there was testimony on that and that the child felt overwhelmed. That was the testimony by the parent. And so therefore, parent concluded that there were no solutions, that essentially the school could not, was not appropriate for the child. That's actually not a basis on which to find a material failure to implement. There actually, first there should be an actual failure, but that sort of speculation by the parent doesn't actually rise to the level that's required. I'm just asking one, and I know we're over your time here, but one question. If they did not have a quiet room, what is your position on whether that would have been a free appropriate publication, public education implementing the IEP? It would, to me, it would be a fact-intensive inquiry about whether the child could access the education. My guess, my own instinct, is to say no. I don't think that's a material failure to implement. What we know is that you look at the proportion of services that are mandated by the IEP and you look at what the IEP would have provided. Now here, if there were special circumstances with this concern about a quiet room, it was nowhere in the record. The parent didn't raise it, to my knowledge, and there very well could be such a room. We simply don't know. There would really need to be something extraordinary there to say the child could not be educated at all. You know, that there would be no educational benefit to the child. I don't think educated at all is the test, but my colleagues have any more questions? Any questions? All right, thank you very much. Thank you. Okay, Mr. Tierca, we'll give you two minutes. Did I say that right? Is it Tierca? Thank you, Your Honor. I'm sorry? Did I say it right, Tierca? You did, thank you. Thank you for everything. Regarding what was just discussed, I think it's very important that the Court keep in mind that DCPS bore the burden of proof by DC statute regarding these substantive issues. Council cannot, the district cannot say we don't know about the quiet space one way or the other. DCPS had to prove it, and they knew what the issues were. They knew it from the email about FROST, and they knew it from the pre-hearing conference, and they knew it because JT put on her case first. They knew exactly what issues they had to cover. I do want to say a few points about the participation issue, but not on the question of definition of placement. I didn't fully answer Judge Katz's question. The participation, the denial of participation has actually four aspects to it. One is that it was a change of placement. DCPS has always said, no, a school isn't a placement, a school is location. When they send out those letters, they're called location of service letters. That's what they say consistently through the litigation. Well, the problem for the district is that location is also a necessary part of the IEP, and therefore, location must also be discussed and negotiated with the parent. So whether this is a change in placement or a change in location, doesn't, or both, doesn't matter much. Either way, the parent was entitled to participation, and DCPS utterly denied it. The third aspect is the regulation. This is what the district court spent, unfortunately, all of its time on, but 300.325a has a specific requirement for when DCPS is making a placement to a private school. They did not come close to meeting it here. They did not have any kind of meeting with that private school representative, and we discussed what CSM thought was the importance of that. Finally, even by the district's, this is my last sentence, even by the district's this was a substantial change in the education of VT, as even the hearing officer while ruling against us held. Thank you. Thank you very much. Case is submitted.
judges: Millett, Katsas, Randolph